A02A1229. IN THE INTEREST OF J. R. H., a child.
(570 SE2d 652)

JOHNSON, Presiding Judge.

The father of minor J. R. H. appeals from the juvenile court order terminating his parental rights. He argues that there is insufficient evidence to support the termination order. The argument is without merit.

The standard of review in a termination of parental rights case is whether, upon viewing the evidence in the light most favorable to the appellee, a rational trier of fact could have found clear and convincing evidence that the parent's rights should be lost.[1] On appeal, we do not weigh the evidence or determine witness credibility; rather, we defer to the trial court's findings of fact and simply determine the sufficiency of the evidence.[2]

In the instant case, the evidence shows that minors J. J., J. R. H. and J. R. J. all have the same mother but different fathers. The mother also had a fourth child, K. J., who died in 2000. The mother first became involved with the Chatham County Department of Family & Children Services shortly after the birth of J. J. in 1992. The mother reported to a hospital that J. J. was having breathing problems, but the hospital staff eventually suspected that the mother was intentionally causing the problems. The hospital videotaped the mother smothering J. J. by tightly holding the child's face against her chest. When the hospital monitor recording the child's vital signs registered distress, the mother would place the child on her lap just before medical staff arrived.

Based on the hospital incident, the juvenile court found J. J. to be deprived and transferred temporary custody of the child to the Department. The mother was also convicted of felony cruelty to a child and sentenced to ten years on probation. The probation was later revoked, and the mother served a short term in jail.

In 1995, J. R. H. was born, and the mother gave permanent guardianship of the child to her own parents. The Department also transferred legal custody of J. J. to the maternal grandparents. In 1996, the mother gave birth to J. R. J., and K. J. was born in 1998.

When K. J. died in 2000, the Department discovered that the children had been residing with the mother. The Department filed a petition alleging deprivation of the three surviving children. The juvenile court determined that the children were deprived and gave the Department temporary legal custody of them.

J. R. H.'s father was convicted of forgery in 1997 and sentenced to eight years of probation. In 1999, his probation was revoked

---

[1] *In the Interest of D. S. R.*, 246 Ga. App. 426, 427 (1) (541 SE2d 61) (2000).

[2] Id.

because he had committed the offense of aggravated assault with intent to rob. He is currently incarcerated, with a maximum parole date of 2005. The father has admitted that prior to his incarceration he did not provide financial support for the child, although he claims to have provided the mother with baby formula and other items. The father has further admitted that his felony conviction has adversely affected his relationship with the child.

In deciding whether to terminate parental rights, the court must first determine if there is present clear and convincing evidence of parental misconduct or inability.[3] And if there is such evidence of misconduct, the court shall then consider whether termination of parental rights is in the best interest of the child.[4]

Here, the juvenile court properly found clear and convincing evidence of misconduct by J. R. H.'s father. The court entered an order on June 15, 2000, finding that J. R. H. is deprived, and the child was later deemed deprived in various extension and custody orders. The father did not appeal from these orders and is thus bound by the finding that the child is deprived.[5]

The court was further authorized to find that the deprivation is caused by the father's lack of parental care or control, that the deprivation is likely to continue and that it will harm the child.[6] The father was convicted of felony forgery, he violated his probation by committing an assault, he is now imprisoned with a maximum parole date of 2005 and his conviction has adversely affected his relationship with J. R. H.[7] Except for a few months after the child's birth, the father has not lived with the child, and he has failed to form a bond with the child.[8] Both before and during his incarceration, he has not provided for the care and support of the child, and he has not consistently communicated with the child.[9] Moreover, the father did not even seek to legitimate J. R. H. until the Department initiated termination proceedings, some six years after her birth. Based on all the circumstances, the juvenile court correctly found clear and convincing evidence of the father's parental misconduct and inability.

Moreover, the same factors which show parental misconduct or inability can also support a finding that termination of parental rights is in the child's best interest.[10] Accordingly, given the father's

---

[3] OCGA § 15-11-94 (a).
[4] Id.
[5] OCGA § 15-11-94 (b) (4) (A) (i); *In the Interest of E. C.*, 225 Ga. App. 12, 14-15 (482 SE2d 522) (1997).
[6] OCGA § 15-11-94 (b) (4) (A) (ii)-(iv).
[7] OCGA § 15-11-94 (b) (4) (B) (iii).
[8] OCGA § 15-11-94 (b) (4) (C) (i).
[9] OCGA § 15-11-94 (b) (4) (C) (ii).
[10] *In the Interest of D. T.*, 221 Ga. App. 328, 329 (1) (471 SE2d 281) (1996).

criminal record and incarceration, his neglect of the child, his failure to care for and support J. R. H. before being incarcerated and his failure to form any meaningful bond with the child, the juvenile court properly found that termination is in the best interest of J. R. H.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED AUGUST 29, 2002.

*Darden, Burns & Burns, Richard M. Darden, Jennifer R. Burns,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Beckmann & Lewis, Leo G. Beckmann, Jr.,* for appellee.